UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| MUHAMMAD N. A.,[1] | : Case No. 3:21-cv-341 |
| Plaintiff, | : |
| vs. | : Magistrate Judge Peter B. Silvain, Jr. |
| | : (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**DECISION AND ENTRY**

Plaintiff Muhammad N. A., brings this case challenging the Social Security Administration's denial of his application for a period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #6).

**I.     Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits on January 21, 2016, alleging disability due to several impairments, including a broken femur bone and "tibula and fibula fracture." (Doc. #6-6, *PageID* #200). After Plaintiff's application was denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) Deborah F. Sanders. ALJ Sanders concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. (Doc. #6-2, *PageID #s* 30-39). After the Appeals Council denied review, Plaintiff filed a previous case in the United States District Court for the Southern District of Ohio, and this Court remanded the case to the Commissioner. *See Muhammad A. v. Comm'r of Soc. Sec.*, No. 3:19-CV-134, 2020 WL 5651562 (S.D. Ohio Sept. 23, 2020); (Doc. #5, *PageID* #s 692-99). Upon remand, ALJ Stuart Adkins held a second hearing via telephone and issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

| | | |
|---|---|---|
| Step 1: | | Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of December 27, 2015 through his date last insured of December 31, 2020. |
| Step 2: | | Through his date last insured, he had the following severe impairments: fracture of the right leg with ORIF, residual hip pain, residual right knee pain, and status post hardware removal. |
| Step 3: | | Through his date last insured, he did not have an impairment or combination of impairments that met or medically equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |

| | | |
|---|---|---|
| Step 4: | | His residual functional capacity (RFC), or the most he could do despite his impairments, through the date last insured, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consist of a "sedentary work … except he can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; can stand and/or walk for about 2 hours and sit for about 6 hours in an 8 hour workday; can never push and/or pull with the right lower extremity; can never climb ladders[,] ropes and scaffolds; can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; can frequently balance; should avoid concentrated exposure to extreme cold[,] unprotected heights and dangerous machinery; would require the use of a cane; can perform simple routine tasks but not at a production rate pace and without strict performance quotas; can have occasional interaction with supervisors, co-workers and the general public; can tolerate occasional changes to a routine work setting defined as 1-2 per week." |
| Step 4: | | Through his date last insured, he was unable to perform any past relevant work. |
| Step 5: | | Through his date last insured, considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. |

(Doc. #6-8, *PageID* #s 639-48). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability at any time from December 27, 2015, his alleged onset date, through December 31, 2020, his date last insured. *Id.* at 648.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #6-8, *PageID* #s 637-48), Plaintiff's Statement of Errors (Doc. #7), and the Commissioner's Memorandum in Opposition (Doc. #9). To the extent that additional facts are relevant, they will be summarized in the discussion below.

**II.** **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r*

3

*of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.     Discussion**

Plaintiff asserts that the "ALJ reversibly erred in evaluating [Plaintiff's] RFC and Dr. Kreul's treating source opinion." (Doc. #7, *PageID* #989). The Commissioner maintains that the ALJ provided good reasons for discounting Dr. Kreul's opinion and substantial evidence supported the ALJ's residual functional capacity assessment. (Doc. #9).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions

of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.[2]

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

---

[2] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, among other things, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416). Since Plaintiff's application was filed prior to the effective date of March 27, 2017, the treating physician rule is still applicable to his claims.

Dr. Kreul completed a "Medical Source Statement" in September 2016. (Doc. #6-7, *PageID* #s 334-35). On the form, Dr. Kreul indicated that she had been treating Plaintiff since December 28, 2015. *Id.* at 334. She opined Plaintiff could sit for six or more hours in an eight-hour workday, stand/walk for one hour in eight-hour workday, and should alternate between sitting and standing every twenty minutes to relieve pain or discomfort. *Id.* Plaintiff could occasionally lift/carry less than ten pounds and rarely lift/carry more than ten pounds. *Id.* He could occasionally push or pull with her upper extremities and rarely push or pull with his lower extremities. *Id.* Dr. Kreul opined Plaintiff would miss two days per month due to his impairments and/or treatment. *Id.* at 335. She noted that Plaintiff would likely need to have the screws in his right knee removed. *Id.*

The Commissioner asserts that the ALJ correctly concluded that Dr. Kreul was not a treating source. (Doc. #9, *PageID* #s 1010-13). Indeed, the ALJ found that there were "no medical notes in the record that would substantiate" Dr. Kreul's assertion that she had been treating Plaintiff since December 28, 2015. (Doc. #6-8, *PageID* #646). The Commissioner indicates that Dr. Kreul's name only appears once in the medical records: an instruction by Dr. Kreul to discontinue ibuprofen before the procedure to remove screws from Plaintiff's right knee. (Doc. #9, *PageID* #1012) (citing Doc. #6, *PageID* #423).

Plaintiff does not refute the Commissioner's argument in his Statement of Errors or Reply. (Doc. #s 7, 10). Nor does he point to any records of treatment by Dr. Kreul. Instead, Plaintiff merely refers to Dr. Kreul as Plaintiff's "treating physician."[3] (Doc. #7, *PageID* #994).

---

[3] At Plaintiff's first hearing, ALJ Sanders asked Plaintiff about "Dr. Sarah Kul." (Doc. #6-2, *PageID* #64). The transcript indicates that is the phonetic spelling of her name. *Id.* Based on the first name and similar last name, it

A treating source is a "medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R § 404.1527(a)(2). There is no evidence in the record that Plaintiff had an ongoing treatment relationship with Dr. Kreul. At most, it appears from the record that Dr. Kreul saw Plaintiff once before his knee surgery. Therefore, Plaintiff has not established that Dr. Kreul saw him "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required" for her medical condition. 20 C.F.R § 404.1527(a)(2); *see Grisier v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 476 (6th Cir. 2018) ("Such one-off evaluations generally do not qualify a medical source as a 'treating source.'") (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 273-74 (6th Cir. 2015); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439-40 (6th Cir. 2012); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)).

Nevertheless, even if Dr. Kreul is Plaintiff's treating physician, the ALJ provided good reasons, supported by substantial evidence, for discounting some of her opinions. The ALJ determined that Dr. Kreul's opinion was not entitled to controlling or deferential weight. (Doc. #6-8, *PageID* # 646). Generally, the ALJ observed that Dr. Kreul provided her opinion less than a year after Plaintiff's accident. *Id*. Further, he noted that Dr. Kreul's conclusions were based on

---

appears that the ALJ was referring to Dr. Kreul. Plaintiff testified that she worked at Miami Valley, he last saw her in 2017, and they told him to come back in six months. *Id.* When asked what he saw her for, Plaintiff responded, "They check up on my leg. See the progress in my leg. …" *Id.* The ALJ told Plaintiff's attorney that the only record he had from Dr. Kul was the "MSS" (Medical Source Statement). *Id.* at 65. Plaintiff's attorney agreed that they "had all the [Miami] Valley and you know, there wasn't much mention of her." *Id.* He indicated he would check back but that he believed they had everything. *Id.* There is no indication in the record that Plaintiff's attorney found any further records from Dr. Kreul.

Plaintiff's condition after he had screws placed in his right knee. *Id*. However, after Dr. Kreul provided her opinion, Plaintiff underwent surgery to remove the screws from his knee. *Id.*

The ALJ also gave specific reasons for discounting some of Dr. Kreul's opinions. Plaintiff takes issue with two of the ALJ's reasons, asserting that the ALJ erred in finding that Plaintiff subsequently showed improvement with physical therapy and that his chronic pain would not cause him to be absent from work two days per month. (Doc. #7, *PageID* #s 994-95).

When addressing Dr. Kreul's opinion that Plaintiff could sit for six or more hours in eight-hour day and stand/walk for one hour in an eight-hour day, the ALJ appropriately considered whether her opinions were consistent with and supported by the medical evidence. The ALJ found that Dr. Kreul's opinion that Plaintiff could stand/walk for one hour in an eight-hour day was "only somewhat consistent" with the evidence of record. (Doc. #6-8, *PageID* #645); *see* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). However, the ALJ found that Dr. Kreul's opinion that Plaintiff could sit for six or more hours in an eight-hour day was consistent with and supported by the evidence of record. In support, as pointed to by Plaintiff, the ALJ observed that Plaintiff "began to show improvement with range of motion with physical therapy." *Id.* (citations omitted).

Notably, Plaintiff does not assert that the records do not show improvement. Instead, Plaintiff argues that more recent medical records show that he continued to have difficulty. (Doc. #7, *PageID* #s 994-95). For example, in October 2017, Plaintiff still required a cane for ambulation and was using a TENS unit. *Id.* (citation omitted). A month later, in November 2017, Plaintiff

8

presented with increased pain, decreased hip and knee strength, decreased knee range of motion, decreased hamstring and hip flexor flexibility, and postural and gait abnormalities. *Id.* (citation omitted).

The ALJ discussed Plaintiff's use of a cane and accounted for it in his residual functional capacity assessment. Specifically, the ALJ found that Plaintiff's "use of a cane is more preference than medical necessity." (Doc. #6-8, *PageID* #645). Nevertheless, "in an abundance of caution and in consideration of [Plaintiff's] noted use of sitting breaks," the ALJ concluded that Plaintiff would likely need to use a cane. *Id*.

Furthermore, in weighing Dr. Kreul's opinion, the ALJ did not solely discount it based on Plaintiff's improvement during physical therapy. The ALJ also observed that Plaintiff reported to his treating sources that he was walking more and trying to walk without his cane. *Id.* (citations omitted). This is consistent with his testimony during his hearings. Plaintiff testified that he could stand for "maybe an hour, maybe more" before he needs to sit down. (Doc. #6-2, *PageID* #68). He also walked on a treadmill for five to ten minutes per day (three quarters of a mile), walked his dog, and swept and mopped. *Id.* at 67, 73.

Additionally, although the ALJ recognized Plaintiff's improvement, the ALJ also acknowledged that Plaintiff had moderate sensitivity with weight bearing, moderate loss of range of motion to right hip, and an abnormal gait. (Doc. #6-8, *PageID* #645). Given these ongoing difficulties, the ALJ reasonably concluded that Plaintiff could stand/walk for two hours in eight-hour workday.

Moreover, the ALJ also recognized many of Plaintiff's more recent medical records when discussing Plaintiff's postural limitations.  Specifically, he found that more recent medical records show "restricted range of motion of the lumbar spine, painful response to deep palpitations, bilateral tenderness of the sacroiliac region, positive Facet loading testing bilaterally, restricted right hip range of motion, tenderness of the right hip, decreased range of motion of the right knee with tenderness to palpation, and antalgic gait …." *Id*.  As a result, the ALJ concluded that Plaintiff could only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; frequently balance; and never climb ladders, ropes, or scaffolds.  *Id*.

The ALJ also considered Dr. Kreul's opinions that Plaintiff would occasionally experience pain or other symptoms that would interfere with his attention and concentration and that he was expected to be absent from work at least two days per month.  *Id.* at 645-46.  He reasonably concluded that the evidence of record did not support either opinion.  *Id.*  In support, the ALJ observed that Plaintiff's pain did not interfere with his ability to participate in his treatment, including physical therapy.  *Id.* at 646.  Further, during physical therapy, Plaintiff reported that his worst pain was approximately five to six out of ten.  *Id.* (citations omitted).  Finally, the ALJ noted that Plaintiff did not appear to have any difficulty concentrating during the hearing.  *Id.*  Nonetheless, the ALJ recognized that chronic pain and pain medication may interfere with cognitive abilities.  Accordingly, the ALJ limited Plaintiff to "simple routine tasks but not at a production rate pace and without strict production quotas.  He should have no more than occasional interaction with supervisor[s], co-workers, and the general public.  [He] could [tolerate] occasional changes to a routine work setting defined as one to two per week." *Id.*

10

Ultimately, Plaintiff argues that the ALJ should have weighed certain evidence more heavily in his analysis of Dr. Kreul's opinions.  However, the Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record.  *Bradley v. Sec'y of Health and Human Serv.*, 862 F.2d 1224, 1228 (6th Cir. 1988); *Young v. Sec'y of Health and Human Servs.*, 787 F. 2d 1064, 1066 (6th Cir. 1986); *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 422 (6th Cir. 2008) (The Court "may not try the case *de novo*[;] nor resolve conflicts in evidence[;] nor decide questions of credibility." (quoting *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984)).  "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."  *Buxton v. Halter,* 246 F.3d 762 772 (6th Cir. 2001).  Rather, if the Commissioner's decision "is supported by substantial evidence, then we must affirm the [Commissioner's] decision[,] even though as triers of fact we might have arrived at a different result."  *Elkins v. Sec'y of Health and Human Servs.,* 658 F.2d 437, 439 (6th Cir. 1981) (citing *Moore v. Califano,* 633 F.3d 727, 729 (6th Cir. 1980)).  In this case, the ALJ's reasons for discounting some of Dr. Kreul's opinions are supported by substantial evidence.  *See Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

Plaintiff also asserts that substantial evidence does not support the ALJ's conclusion that he could sit for long periods as required by sedentary work.  (Doc. #7, *PageID* #995).  Plaintiff points to medical records that show he reported impaired sitting tolerance and complained his feet were "going to sleep" when he sat for too long.  *Id.* (citing Doc. #6, *PageID* #s 858, 953, 957).

"RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis …." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (July 2, 1996). The ALJ is responsible for assessing an individual's RFC. 20 C.F.R. § 404.1520(a)(4). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- i.e., opinions about what the individual can still do despite his or her impairment(s) -- submitted by an individual's treating source or other acceptable medical sources." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (footnote omitted). "An administrative law judge is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Plaintiff has not pointed to a medical opinion that indicates he cannot sit for six hours out of an eight-hour day. Indeed, Plaintiff has not identified a medical opinion that specifically mentions that Plaintiff's ability to sit is more impaired than found by the ALJ. However, there are two medical opinions that support the ALJ's finding. Dr. Kreul opined Plaintiff could sit for six or more hours in an eight-hour day. (Doc. #6-7, *PageID* #334). The ALJ relied on Dr. Kreul's opinion, concluding that the sitting limitations opined by Dr. Kreul were consistent with and supported by the evidence of record. (Doc. #6-8, *PageID* #645). Similarly, Michael Delphia, M.D., the record-reviewing consultant, opined Plaintiff could sit for six hours in eight-hour day. (Doc. #6-3, *PageID* #96).

Additionally, although Plaintiff reported impaired sitting tolerance and numbness in his feet if he sits for too long, there is no further explanation for the cause of these problems or describing the impact they have on his functioning. *See* Doc. #6-13, *PageID* #s 858, 953.

In sum, the ALJ reasonably found that Plaintiff is able to sit for six hours in an eight-hour workday and substantial evidence supports the ALJ's conclusion. *See Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 170 (6th Cir. 2016) ("the ALJ was not required to include a limitation for elevating legs in the RFC because, although there were some treatment records that mentioned leg elevation as a treatment for edema, no physician indicated that Sorrell's edema caused work-related functional limitations, and no medical expert opined that Sorrell would need to elevate her feet to waist level during the workday or even every day.").

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Errors (Doc. #7) is **OVERRULED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the docket of this Court.

March 23, 2023                                  s/*Peter B. Silvain, Jr.*
                                                Peter B. Silvain, Jr.
                                                United States Magistrate Judge

13